**Bobby Rydell MARSHALL,**
**Plaintiff–Appellant,**

v.

**Daryl F. GATES, etc., et al.,**
**Defendants–Appellees.**

No. 93–55022.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 4, 1994.

Opinion Filed Nov. 8, 1994.

Opinion Withdrawn Jan. 4, 1995.

Decided Jan. 4, 1995.

As Amended Jan. 27, 1995.

Stephen Yagman, Yagman & Yagman, Venice, CA, for plaintiff-appellant.

* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting

Leslie E. Brown, Asst. City Atty., Los Angeles, CA, for defendants-appellees.

Before: D.W. NELSON and NOONAN, Circuit Judges, and KING *, District Judge.

## ORDER

The opinion filed November 8, 1994 is withdrawn.

## OPINION

NOONAN, Circuit Judge:

Bobby Rydell Marshall (Marshall) brought this civil rights action under 42 U.S.C. § 1983, et seq., against Daryl Gates and other police officers of the City of Los Angeles (Gates). The district court, applying a local rule of the court, granted summary judgment for the defendants.

### PROCEEDINGS

Marshall is an African–American Los Angeles Police Officer, who alleges he was subjected to two negative work actions as a result of his allegations of racism in the Los Angeles Police Department (LAPD). According to his two affidavits (a sworn declaration and a sworn answer to interrogatories), on May 19, 1991 he provided information to Barbara Kelly and Brian Sunn, two lawyers working for the Christopher Commission, about racism within the LAPD. He told the lawyers that he had personally experienced racism within this organization and that he had previously been urged not to report misconduct by LAPD officers, not to testify to misconduct by LAPD officers, and to participate in a code of silence. Also in May 1991 he appeared on a PBS television program, "Beyond 2000," on which Daryl Gates also appeared; on this program Marshall "strongly criticized racism" in the LAPD.

by designation.

Further, according to Marshall's affidavits, in June 1991 he was approached at roll call by Lieutenant Joseph Germain, the police officer to whom he reported. Germain admitted that racism existed within the LAPD but told Marshall it should be handled within the department and should not be aired publicly. Germain then ordered Marshall to go with him to the office of Robert Kimball, the captain in command. Kimball expressed to Marshall his anger about what Marshall had said on the television show and his anger that Marshall had spoken to representatives of the Christopher Commission. Kimball told Marshall that he had been called by Chief Gates and another police officer and asked why one of his officers was embarrassing the chief and the department by his talk of racism to the Christopher Commission. Marshall replied that he had read the Constitution of the United States and that it referred to freedom of speech. At that Kimball became angry and told Marshall, "We will deal with you later, get out of my office."

Following this incident Marshall was transferred from the morning shift, working from 7:00 a.m. to 3:45 p.m., to "the graveyard shift," working from 10:00 p.m. to 6:30 a.m. Still according to his affidavits, the change of shift was contrary to the LAPD's watch rotation and seniority policy. The second work action involved a promotion which Marshall did not receive; according to him, an improper transfer from a different division was used to fill the vacancy in retaliation for Marshall's complaints about racism.

According to the affidavit of Robert Kimball, Marshall was transferred from the morning shift to the graveyard shift "based solely on the deployment needs of the Southwest Division" and the transfer which filled the vacancy prevented a promotion from within the division. According to the affidavit of Joseph Germain, Marshall once mentioned to him that he had testified before the Christopher Commission, but Germain did not question him concerning his testimony and never took him before the captain for that reason; according to Germain, he was not involved in the supervision of Marshall in June 1991. According to the affidavit of Daryl Gates, he never spoke to either Kimball or Germain about the events referred to by Marshall and had no knowledge of Marshall's change of watch. According to the declaration of Patricia Ibarra, a police officer in the Southwest Division, she reassigned Marshall in accordance with existing policy and with no knowledge of his testimony before the Christopher Commission.

The defendants moved for summary judgment. The court noted that under Local Rule 7.6 a party opposing summary judgment must "serve upon all other parties and file with the Clerk ... the evidence upon which the opposing party will rely in opposition to the motion ..." fourteen days before the hearing on the motion. The hearing date set by the court was September 21, 1992. Under Local Rule 7.6 Marshall was required to file his opposition papers by September 8, 1992. But his affidavits, although mailed on September 16, 1992, were not filed until September 17 and 18, 1992, and had not been received by opposing counsel by the hearing date.

Under Local Rule 7.9 papers not timely filed by a party "will not be considered and may be deemed by the court consent to the granting or denial of the motion as the case may be." Applying this rule, the court declared that it would disregard Marshall's opposition papers. Based only upon the affidavits submitted by the defendants, the court ruled that there were no material facts in dispute and granted summary judgment for the defendants.

Marshall appeals.

## ANALYSIS

■ Local rules are "laws of the United States." *United States v. Hvass,* 355 U.S. 570, 575, 78 S.Ct. 501, 504, 2 L.Ed.2d 496 (1958). Local Rule 7.6 is a rule made by the Central District of California and so is valid if it is "not inconsistent" with the Federal Rules of Civil Procedure. F.R.C.P. 83.

The difficulty, however, is that the local rule appears to be inconsistent with the federal rule governing summary judgment to the extent that it bars a party from submitting affidavits in opposition to summary judgment prior to the day of the hearing.

F.R.C.P. 56(c). The federal rule explicitly provides: "The adverse party prior to the day of hearing may serve opposing affidavits." Service by mail is completed upon mailing. F.R.C.P. 5(b). It appears to be inconsistent with Rule 56(c) to require a much earlier filing and service of opposing affidavits.

■ We are, however, under an obligation to construe local rules so that they do not conflict with the federal rules, and we have exercised our ingenuity in doing so, e.g., *United States v. Lopez–Cavasos,* 915 F.2d 474, 478 (9th Cir.1990). The instant apparent conflict is where we again must engage in interpretation in order to produce consistency. We are the more inclined to do so because it has been brought to our attention by a colleague on this court that all of the district courts in this circuit have rules similar to Rule 7.6. *See* Ariz.R. 11(*l*)(2); E.D.Cal.R. 230(c); N.D.Ca.R. 220–3; S.D.Cal.R. 7.1(e)(2); Haw.R. 220–4; Idaho R. 7.1(a); Mont.R. 220–1(a); Nev.R. 13; Or.R. 220–2; E.D.Wash.R. 56(b); W.D.Wash.R. 7(b)(2). (It is the right of every member of this court to comment upon an opinion of this court and a duty to do so if a member of the court believes the law to be misstated.)

■ Accordingly, an interpretation consistent with the reality of practice in the district court is that F.R.C.P. 56(c) does not unconditionally require a district court to accept affidavits up to the date set for hearing on the motion for summary judgment. Rather, the rule allows district courts to adopt procedures pursuant to which the non-moving party may oppose a motion prior to a hearing date. Local Rule 7.6 in no way eliminates this opportunity; instead it places a condition on that right.

Nonetheless, we have held that a motion for summary judgment cannot be granted simply because the opposing party violated a local rule. *Henry v. Gill Industries, Inc.,* 983 F.2d 943, 950 (9th Cir.1993). We are bound by *Henry.* There we noted that "the party opposing the motion is under no obligation to offer affidavits or any other materials in support of its opposition. Summary judgment may be resisted and must be denied on no other grounds than that the mov-

ant has failed to meet its burden of demonstrating the absence of triable issues." *Id.* We upheld the district court only because the counterclaim that the district court purported to decide on the basis of the local rule was frivolous. There was not the slightest suggestion that summary judgment was acceptable as a sanction for failure to abide by the local rule.

■ Here the district court's refusal to consider Marshall's papers led it to conclude that the case "contains no factual evidence other than those facts presented by defendants." This conclusion resulted in summary judgment for Gates. The practical effect, therefore, was to grant summary judgment as a sanction for the late filing; a result inconsistent with our holding in *Henry.* Gates' papers did not even address the allegations of racism and retaliation that gave rise to Marshall's complaint. He did not, therefore, meet his burden of demonstrating an absence of genuine issues for trial.

■ Moreover, any sanction would be inappropriate here inasmuch as Gates relied on what is a plain reading of F.R.C.P. 56(c), one which indeed persuaded this court in the opinion first issued and now withdrawn in this case. In the future, of course, litigants will be bound by our interpretation of the consistency of the Local Rules with Rule 56(c). For violation of the local rule the district court will be free to devise such sanctions as seem appropriate short of granting summary judgment where the movant has failed to meet its burden of demonstrating the absence of triable issues, *Henry* at 950.

**REVERSED.**