UNITED STATES of America,
Plaintiff–Appellee,

v.

REAL PROPERTY LOCATED
AT INCLINE VILLAGE,
et al., Defendants,

Brian J. Degen and Karyn Degen,
Claimants–Appellants.

No. 93–16996.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 16, 1994.

Decided Feb. 10, 1995.

Order Amending Opinion on Denial of Rehearing and Suggestion for Rehearing En Banc May 5, 1995.

Daniel W. Stewart, Daniel W. Stewart, Ltd., and C. Frederick Pinkerton, C. Frederick Pinkerton, CHTD., Reno, NV, for claimants-appellants.

Greg Addington, Asst. U.S. Atty., Reno, NV, for plaintiff-appellee.

Before: SNEED, NORRIS, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Brian and Karyn Degen appeal from judgments entered against them in the district court on their claims to the defendant properties in this civil forfeiture action. The district court held in a published opinion that Brian Degen (hereinafter referred to as "Brian") was "disentitled" from pursuing his claim to the defendant properties under the fugitive disentitlement doctrine. *See, e.g., United States v. $129,374 in United States Currency,* 769 F.2d 583 (9th Cir.1985), *cert. denied,* 474 U.S. 1086, 106 S.Ct. 863, 88

L.Ed.2d 901 (1986). Two and one-half years later, the district court entered judgment against Karyn Degen ("Karyn") pursuant to Local Rule 140-6 of the District of Nevada, which provides in part that the failure of a party to file an opposition to a motion "shall constitute a consent to the granting of the motion." The district court entered judgment under this rule when Karyn failed to file a response to the government's summary judgment motion against her, despite receiving several extensions of time and being warned that the court intended to invoke Local Rule 140-6.

We have jurisdiction under 28 U.S.C. § 1291 and now affirm as to both appellants.

## FACTS AND PROCEDURAL HISTORY

This civil forfeiture action under 21 U.S.C. §§ 881(a)(6) & (7) involves several million dollars worth of real and personal property, bank accounts, property income, and business interests located in California, Nevada, and Hawaii. The government initiated forfeiture proceedings against a wide array of property in 1989; after the Degens filed claims to a substantial portion of the property, the government severed those properties and made them the subject a second complaint. The complaint alleges that all the defendant properties were the fruits of and/or used to facilitate a massive marijuana trafficking operation Brian had participated in for over twenty years, beginning in the late 1960s. In a separate proceeding, a grand jury in the District of Nevada indicted Brian on a wide array of criminal charges relating to the alleged marijuana smuggling and related money laundering activities.

Brian is a Swiss citizen. Shortly before being indicted, he left the United States and resettled with his family in Switzerland. Under the extradition treaty between Switzerland and the United States, neither country is obligated to extradite its own nationals, so the United States government has been unable to secure his return to this country to face the criminal charges in Nevada. Brian refused to return voluntarily to the United States when he learned of the criminal charges against him. He was apparently arrested in Switzerland in late 1992, although

the nature and disposition of the Swiss charges remain something of a mystery. There is no indication, at any rate, that Brian has at any point during the five years since his indictment made a good faith attempt to submit to the criminal jurisdiction of the Nevada district court.

The government first moved for summary judgment in May 1990. The district court granted the motion with respect to Brian, holding that he was a fugitive from justice in the related criminal case and therefore was not entitled to contest the civil forfeiture action. The court denied the first motion against Karyn, finding that she had raised triable issues of fact with respect to her innocent owner defense.

The government moved again for summary judgment in December 1992, against Karyn only. The second motion was supported by affidavits of three of Brian's alleged partners in his drug smuggling business, detailing their illegal activities and the sizeable amounts of money Brian earned therefrom over the years. The affiants also alleged that Brian had no significant income from legitimate sources during the long period covered by the criminal indictment. The motion was further supported by documentary evidence and an accompanying authenticating affidavit by the Assistant United States Attorney handling the case.

Under Local Rule 140–4, Karyn initially had fifteen days in which to respond to the summary judgment motion. She obtained numerous extensions of this deadline, claiming that sealing orders obtained by the government made it impossible to gather evidence in support of her claims. After a hearing in February 1993, the district court made all relevant documents available to Karyn to use in preparing her response to the motion, and reopened discovery for sixty days. When Karyn failed to file a response to the summary judgment motion before a final deadline imposed by the district court had passed, the court entered judgment against her pursuant to Local Rule 140–6.

## I.

■ The disentitlement doctrine provides that a fugitive from justice under certain circumstances loses the right to call upon the resources of the courts. In a leading Supreme Court case on the subject, for example, a criminal defendant fled after being convicted and the Court held that his escape "disentitle[d him] to call upon the resources of the Court for determination of his" direct appeal. *Molinaro v. New Jersey*, 396 U.S. 365, 366, 90 S.Ct. 498, 499, 24 L.Ed.2d 586 (1970); *compare Ortega–Rodriguez v. United States,* —— U.S. ——, ——, 113 S.Ct. 1199, 1209, 122 L.Ed.2d 581 (1993) ("[W]hen a defendant's flight and recapture occur before appeal, the defendant's former fugitive status may well lack the kind of connection to the appellate process that would justify an appellate sanction of dismissal.").

The disentitlement doctrine applies in more contexts than just direct criminal appeals. The circuit courts have extended the doctrine to disentitle fugitives from participating in civil proceedings related to the criminal cases they have fled. *See, e.g., Conforte v. Commissioner of Internal Revenue,* 692 F.2d 587 (9th Cir.1982) (taxpayer who fled after conviction on criminal tax evasion charges not entitled to prosecute appeal of tax court determination of tax deficiencies and penalties), *stay denied,* 459 U.S. 1309, 103 S.Ct. 663, 74 L.Ed.2d 588 (1983) (Rehnquist, J., in chambers); *Doyle v. United States Dep't of Justice,* 668 F.2d 1365 (D.C.Cir.1981) (fugitive not entitled to seek judicial relief under Freedom of Information Act), *cert. denied,* 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982); *Broadway v. City of Montgomery,* 530 F.2d 657 (5th Cir. 1976) (court of appeals refused to decide appeal of fugitive seeking damages and injunctive relief for illegal wiretap). More specifically, the disentitlement doctrine has been applied on a regular basis by this court and other circuits in the context of civil forfeiture claims. *See, e.g., $129,374,* 769 F.2d at 587; *United States v. Timbers Preserve, Routt County, Colorado,* 999 F.2d 452 (10th Cir. 1993); *United States v. Eng,* 951 F.2d 461 (2nd Cir.1991); *United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane, Miami, Dade County, Florida,* 868 F.2d 1214 (11th Cir.1989); *United States v. Pole No. 3172, Hopkinton,* 852 F.2d 636 (1st Cir.1988).

**1516**

■ This court left open in *$129,374* the question whether the forfeiture action must be "directly related" to the criminal proceeding from which the claimant has fled, finding it unnecessary to resolve the issue because the "criminal conviction and the property involved in this civil forfeiture proceeding are integrally related parts of the same unlawful drug dealing scheme." 769 F.2d at 588. We need not decide that question either, for the same reason. The government submitted evidence in the present case to establish that all of the properties it seeks to seize were used in connection with or purchased with the proceeds of the various illegal drug transactions which form the basis of Brian's criminal indictment. In addition, the government's "star witness" in the forfeiture case, Ciro Mancuso, and possibly other witnesses, are codefendants in the criminal case. Under these circumstances, the criminal and forfeiture actions are closely enough connected to satisfy any relatedness test.

■ The present case differs from prior Ninth Circuit applications of the disentitlement doctrine in one respect. In prior cases, the claimants have fled after being convicted in a related criminal proceeding. *See, e.g.,* *$129,374*, 769 F.2d at 584; *Conforte*, 692 F.2d at 589. Here, by contrast, Brian has been indicted but not tried or convicted of any criminal charges. This distinction does not, however, compel a finding that the fugitive disentitlement doctrine does not apply. The doctrine rests on the premise that " 'the fugitive from justice has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim.' " *Ortega–Rodriguez,* —— U.S. ——, 113 S.Ct. at 1206 (quoting *Ali v. Sims,* 788 F.2d 954, 959 (3d Cir.1986)). Although Brian has not been arrested or tried, he has certainly "demonstrated disrespect" for the district court by refusing to submit to its jurisdiction in the criminal action.

■ The district court correctly concluded in its opinion dismissing Brian's claims in December 1990 that he was at that time a fugitive from justice because he knew he had been indicted in Nevada but refused to return. 755 F.Supp. at 309–10 (citing *United States v. Ballesteros–Cordova,* 586 F.2d 1321, 1323 (9th Cir.1978) and *United States v. Gonsalves,* 675 F.2d 1050, 1052 (9th Cir.), *cert. denied,* 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982)). At that time he was apparently free to return to the United States to contest the forfeiture action, but chose not to do so, presumably to avoid arrest on the criminal charges. Under these circumstances, Brian was a fugitive. *See* *$129,374,* 769 F.2d at 587–88 ("It is important to recognize that Lewis has complete control over the protection of his property interests in this forfeiture proceeding; if he finds his interests are sufficiently worth defending, he can terminate his fugitive status and present his own defense."); *Gonsalves,* 675 F.2d at 1055 (fugitive status continues until accused makes a "good faith effort to surrender").

Brian was apparently arrested by Swiss authorities on November 19, 1992. His counsel strenuously argued in the district court and again in this court that the Swiss arrested Brian at the behest of the United States government, which wished to "transfer" its prosecution to Switzerland because extradition was impossible. While counsel *argues* this point, however, the record contains no admissible *evidence* to support these claims.

The only document submitted to the district court that even arguably tended to prove that Brian was arrested in Switzerland was an affidavit of the Degens' counsel, submitted by Karyn Degen in support of a request for an extension of time to respond to the second summary judgment motion. The affidavit, however, consists of hearsay, multiple hearsay, and virtually no factual statements based on personal knowledge.

The only other purported *evidence* of United States involvement in Brian's arrest in Switzerland are two letters from the Department of Justice Office of International Affairs to Swiss authorities, supposedly proving that the United States government was "transferring" its prosecution of Brian to Switzerland. There are numerous obstacles to Brian's attempt to use these letters as evidence of improper activity by the government. To begin with, the letters are unauthenticated and, so far as we can discern, are hearsay not subject to any exception. Furthermore, the letters were never submitted

to the district court and constitute an inappropriate attempt to supplement the factual record on appeal.[1]

Even putting these problems aside, Brian has never proffered any supporting evidence or argument explaining the import of the letters. For example, despite being in contact with Brian's Swiss local counsel and possibly with Brian himself, Brian's counsel in this case has apparently failed to obtain a copy of the Swiss charges against Brian in the two years since the arrest in Switzerland. Without even that basic piece of information, any conclusion as to whether the Swiss prosecution was a "transfer" of the Nevada charges would be sheer speculation. Brian has also submitted no legal authority explaining how the purported "transfer" of prosecutions from the United States to Switzerland was effected. Our research reveals no treaty between the United States and Switzerland which authorizes such transfers of prosecution; other bilateral treaties to which the United States is a party, however, do explicitly provide such a mechanism. *See, e.g.,* Treaty on Extradition, U.S.–Denmark, June 22, 1972, art. 5, 25 U.S.T. 1293 (if the requested state declines to extradite its own national, "the requested State shall submit the case to its competent authorities for the purpose of prosecution"); Extradition Treaty, U.S.–Finland, June 11, 1976, art. 4(2), 31 U.S.T. 944 (same); Treaty of Extradition, U.S.–Netherlands, June 24, 1980, art. 4(3), T.I.A.S. 10733 ("If extradition is not granted solely on the basis of the nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its competent authorities for the purpose of prosecution, provided that the offense constitutes a criminal offense under the law of that State and that State has jurisdiction over the offense.").

■ All in all, we find that there is no credible evidence properly in the record before us to support Brian's allegations of government involvement in his arrest and prosecution in Switzerland. Furthermore, there is language in several cases suggesting that the fact that a fugitive is incarcerated in a foreign jurisdiction does not preclude application of the fugitive disentitlement doctrine. *See, e.g., Timbers Preserve,* 999 F.2d at 456 ("Regardless of the reasons for Pietri's incarceration in Laos, he was a fugitive from this country when he left and remained a fugitive until he was returned, even though he may have lost control of his own freedom in Laos."); *Eng,* 951 F.2d at 464 ("One may flee though confined in prison in another jurisdiction."); *United States v. Catino,* 735 F.2d 718, 722 (2nd Cir.) (noting that "a fugitive who is imprisoned in a foreign jurisdiction and then resists his return to the United States may *remain* a 'person fleeing from justice'") (citation omitted), *cert. denied,* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984). Even assuming the situation would be different if Brian could prove that the United States government was somehow involved in his arrest in Switzerland, we find that he has not so proven.

■ The district court erred in one respect in its 1990 opinion. The district court found that upon finding that Brian was a fugitive from justice, this court's decision in *$129,374* allowed for no discretion in the application of the disentitlement doctrine. As a result, the court did not consider whether the doctrine should, in the exercise of its discretion, be applied. Subsequent decisions, however, have made clear that the doctrine is discretionary, not mandatory. *See, e.g., Ortega–Rodriguez,* —— U.S. at —— n. 23, 113 S.Ct. at 1209 n. 23 ("dismissal of fugitive appeals is always discretionary, in the sense that fugitivity does not 'strip the case of its character as an adjudicable case or controversy'") (quoting *Molinaro,* 396 U.S. at 366, 90 S.Ct. at 499); *United States v. Van Cauwenberghe,* 934 F.2d 1048, 1055 (9th Cir.1991) ("while we clearly have the discretionary authority to dismiss this appeal, there is 'no *per se* requirement of dismissal in [these] … case[s]'" (quoting *Hussein v. INS,* 817 F.2d 63, 63 (9th Cir.1986) (Norris, J., concurring))).

---

1. Just prior to oral argument, the Degens made a formal motion to supplement the record on appeal with these letters. We denied the motion.

The present discussion is intended in part to explain that ruling.

Brian does not, however, argue this issue on appeal. We therefore deem it to be waived. We thus hold that the district court properly dismissed Brian's claims to the defendant properties under the fugitive disentitlement doctrine.[2]

## II.

Karyn argues that the district court erred in entering summary judgment against her under Local Rule 140–6. She contends that genuine issues of material fact exist as to her innocent owner defense to the forfeiture action, and that she was unable to prepare a response to the government's second summary judgment motion due to the sealing of various documents and the inability of certain witnesses to testify in depositions about matters also under seal. We find, however, that the district court properly exercised its discretion in granting the government's second summary judgment motion.

### A. *Procedural Background*

The government filed its second summary judgment motion on December 2, 1992. District court Local Rule 140–6 provides that "[t]he failure of an opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute a consent to the granting of the motion." Under Local Rule 140–4, a party normally has fifteen days in which to respond to any motion. The government initially agreed to a fifteen-day extension of that deadline. Karyn did not, however, adhere to that timetable.

On January 5, 1993, several days after the first extended deadline passed, Karyn moved for an extension of time to reply. Karyn argued that the sealing of several documents, including affidavits supporting the government's summary judgment motion, made it impossible to defend the motion. She also complained that she was unable to respond to

the motion because the assistance of Brian Degen was essential and he had been arrested by Swiss authorities, allegedly at the behest of the United States government, and was being held "incommunicado."

In response to this motion, the district court held a hearing. At the close of the hearing, the court found that two of the government's affidavits supporting its motion should not have been sealed and ordered them made available to Karyn. A third affidavit, that of Ciro Mancuso, was ordered sealed but made available to Karyn and her counsel to prepare their response to the motion. The court also reopened discovery for sixty days and allowed Karyn until twenty days after the new close of discovery to respond to the summary judgment motion.

When Karyn failed to respond to the motion by the new deadline, the district court, on May 3, sua sponte granted an additional two week extension. The court warned, however, that if Karyn failed to respond by May 17, "said motion will be forthwith granted." Rather than comply, however, Karyn on May 5 filed a Motion for Order Staying Further Proceedings in This Case Pending Resolution of Related Criminal Actions. On May 19, the government filed an opposition to Karyn's request for a stay, and a request for judgment in accordance with the May 3 Minute Order.

On June 2, the district court denied Karyn's motion for a stay and granted an additional twenty days in which to respond to the summary judgment motion. The court again explicitly warned Karyn that it would enter summary judgment against her if she failed to respond:

> [Karyn] has failed to respond [to the summary judgment motion] within the time period required by the rules. However, rather than to default [her] at this time, the Court will grant an additional period of

---

2. While this appeal was pending, the Supreme Court decided *United States v. James Daniel Good Real Property*, —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), which held that seizure of real property for forfeiture without prior notice and a hearing violates the owner's due process rights under the Fifth Amendment. If not

for Brian's fugitive status, the rule of *Good* would apply to this case. *See United States v. Real Property Located at 20832 Big Rock Drive*, No. 93–55281, slip op. at 3843, 1995 WL 150859 (9th Cir. Apr. 7, 1995). However, the fugitive disentitlement doctrine precludes Brian from contesting the government's seizure of his properties.

twenty (20) days to respond to the motion for summary judgment. If [Karyn] fails to respond to said motion within 20 days summary judgment will be entered. [Karyn] has been allowed ample time to file a response to this motion.

When Karyn failed to file any response or other motion, the district court entered summary judgment against Karyn in an order dated June 23, 1993.

## B. *Discussion*

Federal Rule of Civil Procedure 83 permits the district courts to promulgate local rules governing practice and procedure, so long as the rules do not conflict with the Federal Rules. In appeals from grants of default summary judgment, this court has upheld two Arizona district local rules which are substantially identical to Nevada Local Rule 140–6. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 949–50 (9th Cir.1993) (upholding Local Rule 11(i) of the District of Arizona, providing that failure to serve and file answering memoranda "may be deemed a consent to the denial or granting of the motion summarily"); *United States v. Warren*, 601 F.2d 471, 473 n. 1 (9th Cir.1979) (upholding Arizona Local Rule 11(g), providing that "[a] failure to file a brief or memorandum of points and authorities in support of or in opposition to any motion shall constitute a consent of the party failing to file such a brief or memorandum to the denial or granting of the motion.").

In *Henry*, we noted that the "interrelationship between Rule 56 and Rule 83" requires that the local rule leave a measure of discretion in the hands of the district court. 983 F.2d at 949–50. Because summary judgment is only proper under Rule 56 if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, a local rule cannot mandate automatic entry of judgment for the moving party without consideration of whether the motion and supporting papers satisfy the requirements of Rule 56. *Id.* at 950. *Henry* and *Warren*, 601 F.2d at 473, both held that the Arizona rules phrased similarly to Nevada Local Rule 140–6 permitted sufficient discretion.

Local Rule 140–6 provides that failure to file an opposition to a motion "shall

constitute a consent to the granting of the motion." While the rule allows no discretion in finding that *consent* has been given, it does not remove the district court's discretion as to whether to *grant* the motion. As this court observed in *Warren*, " '[c]onsent' when imposed by rules such as 11(g) can be 'withdrawn' by 'permission' of the court given in its 'discretion.' That is, fictional 'consent' under Rule 11(g) is never a burden from which the transgressor can not be relieved." 601 F.2d at 473.

Local Rule 140–6 allows the same discretion approved in *Warren*, so that the district court retains the power *not* to grant judgment despite a violation of the rule, if the underlying motion is deficient. We therefore hold that the rule is facially valid.

The district court's grant of summary judgment against Karyn would consequently be permissible so long as the government's motion satisfied Rule 56, and we find that it did. Civil forfeiture actions under 21 U.S.C. §§ 881(a)(6) & (7) are in rem proceedings in which the property seized is the defendant. *United States v. One 1985 Mercedes*, 917 F.2d 415, 419 (9th Cir.1990). The government bears the initial burden of showing probable cause that the property seized is the proceeds of a federal narcotics violation or was used to commit or facilitate such a violation. *Id.* Although the government must show "more than mere suspicion," establishing probable cause is not a heavy burden, requiring only that the government "demonstrate by some *credible evidence* the probability that the [property] was in fact" drug-related. *United States v. Dickerson*, 873 F.2d 1181, 1184 (9th Cir.1988) (emphasis in original); *see also United States v. $5,644,-540.00 in U.S. Currency*, 799 F.2d 1357, 1362 (9th Cir.1986) (government must support seizure with "less than prima facie proof but more than mere suspicion"); *United States v. One 56–Foot Motor Yacht Named the Tahuna*, 702 F.2d 1276, 1281 (9th Cir.1983) (standard of probable cause is "similar to that required to obtain a search warrant"). Once the government succeeds in establishing probable cause, the burden of proof shifts to the claimant to show by a preponderance of the evidence that the property is not forfeita-

ble. *United States v. $215,300 U.S. Currency*, 882 F.2d 417, 419 (9th Cir.1989), *cert. denied*, 497 U.S. 1005, 110 S.Ct. 3242, 111 L.Ed.2d 752 (1990).

■ The government submitted all new evidence in support of its second summary judgment motion. The affidavits supporting the second motion consist of statements by Brian Degen's "smuggling partners" which, if believed, establish that Brian earned enormous amounts of money from illegal narcotics trafficking and had virtually no legitimate income.[3] This evidence suffices to establish probable cause that all of the properties seized were purchased with the proceeds of, or used to facilitate, illegal transactions.

In response to the first summary judgment motion, the Degens submitted evidence intended to establish that some of the defendant properties were not forfeitable in their entirety because they had been purchased in part with Karyn's separate property. Without expressing any opinion as to whether the district court properly ruled that this evidence raised a genuine issue of fact with respect to Karyn's claims at the time of the first motion, we find the evidence irrelevant to our review of the district court's Local Rule 140–6 decision of the second motion.

■ Under *Henry*, default summary judgment is proper unless "the *movant's papers are themselves insufficient* to support a motion for summary judgment or *on their face* reveal a genuine issue of material fact." 983 F.2d at 949 (emphasis added). We recently reaffirmed that the facial sufficiency of the moving party's papers is a paramount consideration whenever a district court contemplates entering a default summary judgment. *Marshall v. Gates*, 44 F.3d 722 (9th Cir.1995). In *Marshall*, we held that the district court improperly granted summary judgment in favor of the defendants when the plaintiffs filed and served their response to the motion after the deadline imposed by a

local rule of court. *Id.* at 725. We held that the district court could not enter judgment without considering the sufficiency of the moving party's papers and, in fact, that the defendant's papers were in that case insufficient on their face to sustain the summary judgment. *Id.*

Here, unlike in *Marshall*, the government's papers were sufficient and on their face revealed no factual issue. Karyn might possibly have averted summary judgment simply by resubmitting the same evidence she offered in response to the first motion. She did not do so, however, and therefore cannot complain that the evidence was not considered when she defaulted. While Karyn was under no obligation to submit evidence in opposition to the motion, the government was entitled to summary judgment on the basis of its undisputed evidence.

■ We review the district court's decision to grant judgment for violation of Local Rule 140–6 for abuse of discretion. *See Warren*, 601 F.2d at 474 ("Only in rare cases will we question the exercise of discretion in connection with the application of local rules."); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir.1988) (reviewing local rule allowing dismissal for failure to prosecute); *Miranda v. Southern Pacific Transp. Co.*, 710 F.2d 516, 521 (9th Cir.1983) ("District courts have broad discretion in interpreting and applying their local rules."). The district court did not abuse its discretion in this case. Karyn was allowed a total of over six months to respond to the government's summary judgment motion. Even assuming that the early delays were necessary because various documents were sealed due to the related criminal prosecution, that was no longer the case after the district court's February order reopening discovery and making all documents available to Karyn.

Karyn had the opportunity to depose all witnesses whose affidavits the government submitted in support of its motion.[4] We also

---

3. The Degens claim that the government's affidavits in support of the motion were defective. This contention is meritless. The declarations all appear to be based on personal knowledge, relating events which the declarants witnessed or were told by Brian in the course of their smuggling and financial dealings. Certainly, the Degens might have been able to attack the declarants' credibility had the case gone to trial, but such impeachment would affect the weight of the

evidence, not its admissibility, and is immaterial for summary judgment purposes.

4. Karyn argues that she was unable fully to depose certain witnesses because they refused to answer questions regarding their sealed plea agreements in related criminal cases. Therefore, she claims, she was unable to elicit testimony showing the witnesses' bias. This claim, however, is irrelevant: on a motion for summary judg-

find little merit in her contention that she was prejudiced by the district court's conditioning her right to submit a declaration by Brian Degen on a showing that he was unavailable for a deposition. Karyn did not and still does not explain how it would have been possible to obtain a sworn affidavit from Brian, who was allegedly being held "incommunicado" in a Swiss prison at that time, whereas a deposition would have been impossible. Furthermore, she made absolutely no attempt to present any such declaration to the district court or to show that Brian was in fact unavailable for a deposition.

▬▬▬ The district court specifically warned Karyn at least twice that it would enter judgment under Local Rule 140–6 if she failed to respond. The court sua sponte granted an additional extension. Under these circumstances, granting the government's motion was not an abuse of discretion.[5] *See, e.g., Henderson v. Duncan,* 779 F.2d 1421 at 1423–25 (9th Cir.1986) (no abuse of discretion in dismissing complaint where district court had granted four continuances and warned plaintiff three times of possibility of dismissal as sanction for failure to file proposed pretrial order).

### III.

Shortly before oral argument in this case, the Degens filed a document entitled "Motion to Remand with Instructions to Dismiss with Prejudice." The gist of the motion, which in reality raised a new issue on appeal which had not previously been briefed by the parties, is that this civil forfeiture case must be dismissed on double jeopardy grounds. We find this argument to be utterly without merit.

The Degens rely on the recent decision by a panel of this court in *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994), which holds that civil forfeiture constitutes punishment for double jeopardy purposes and, therefore, the Fifth Amendment's Double Jeopardy Clause precludes the government from bringing a civil forfeiture action based on conduct for which the claimant has already been criminally prosecuted. Although *$405,089.23* may turn out to have far-reaching implications for civil forfeiture actions, it has no effect in the present case.

▬▬▬ The motion purports to be on behalf of both appellants. So far as Karyn Degen is concerned, the suggestion that she has been placed in double jeopardy comes dangerously close to being frivolous. It requires no probing analysis to conclude that one's right to be free from *double* jeopardy cannot be violated by being placed only *once* in jeopardy. Unlike her husband, Karyn has not been indicted, much less tried or convicted, of any criminal charges related to this forfeiture action. Karyn therefore has no plausible argument that she is entitled to relief under the Double Jeopardy Clause.

▬▬▬ Brian's double jeopardy claim is almost as weak. He has been indicted in the District of Nevada on drug trafficking and money laundering charges related to the present forfeiture action. He has not, however, been arrested or tried. It is well-

ment, the district court would not have considered the credibility of the declarants supporting and opposing the motion. *See, e.g., National Union Fire Ins. Co. of Pittsburgh v. Argonaut Ins. Co.,* 701 F.2d 95, 97 (9th Cir.1983) ("neither a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment") (citations omitted). Thus, Karyn's inability to examine the declarants for bias was in no way prejudicial.

5. Karyn further contends that the district court erred by not granting her motion for a stay pending completion of the related criminal proceedings, when no further sealing orders would be necessary. The decision to grant a continuance is committed to the discretion of the trial judge. *See Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849–50, 11 L.Ed.2d 921 (1964); *Mesa Verde Const. Co. v. Northern Cal. Dist. Council of Laborers,* 820 F.2d 1006, 1011 (9th Cir.1987) (no abuse of discretion in denying motion for further discovery when party had access to relevant documents during four week discovery extension and failed to make formal motion for further extension under Fed.R.Civ.Pro. 56(f)), *vacated on other grounds,* 861 F.2d 1124 (9th Cir.1988) (en banc); *United States v. 2.61 Acres of Land, More or Less,* 791 F.2d 666, 670 (9th Cir. 1986) (denial of continuance will not be overturned unless arbitrary or unreasonable). When the district court denied the stay, this case had been pending for five years and Karyn had over six months to respond to the second summary judgment motion, including a sixty-day reopened discovery period. Furthermore, the request for an indefinite stay pending completion of the criminal proceedings seems somewhat disingenuous, since there is no prospect that the criminal proceedings will be concluded so long as Karyn's husband remains a fugitive. Under these circumstances, denial of the request for a stay was not an abuse of discretion.

settled that jeopardy does not attach until the beginning of a criminal trial. *See, e.g., Crist v. Bretz,* 437 U.S. 28, 37 n. 15–38, 98 S.Ct. 2156, 2161–62 n. 15–38, 57 L.Ed.2d 24 (1978) (jeopardy attaches when jury is empaneled and sworn or, in a bench trial, when the first witness is sworn). Thus, there is no jeopardy in the criminal action and this forfeiture case represents at best the "first" jeopardy. We reject as well any suggestion that the Swiss prosecution of Brian enters into the double jeopardy calculus, since Switzerland is without a doubt a separate sovereign for double jeopardy purposes.

### IV.

The judgments of the district court against both Brian and Karyn Degen are

AFFIRMED.

### ORDER

May 5, 1995

Appellant Brian Degen's Motion for Leave to File Reply in Support of Petition for Rehearing and Suggestion for Rehearing En Banc is DENIED.

The opinion filed February 10, 1995, is amended to include the following new footnote number 2, inserted after the last word on page 1518:

With these amendments, the panel has voted unanimously to deny the petition for rehearing. Judge Hall votes to reject the suggestion for rehearing en banc and Judges Sneed and Norris so recommend. The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed.R.App.P. 35.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.