**RESOLUTION TRUST CORPORATION,**
Plaintiff,

v.

**Ghaith R. PHARAON, Defendant.**

**No. 95–517–CIV.**

United States District Court,
S.D. Florida.

March 20, 1996.

Diane Ferraro, Friedman, Rodriguez & Ferraro, P.A., Miami, Fla., Candace Fabri, Sachnoff & Weaver, Ltd., Chicago, IL, Sharon Zissman, Resolution Trust Corporation, Washington, DC, for plaintiff.

Francisco R. Angones, Miami, Fla., Richard F. Lawler, John M. Newell, Whitman, Breed, Abbot & Morgan, New York City, for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE ANSWER

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Plaintiff Resolution Trust Corporation's ("RTC") motion to strike Defendant Ghaith R. Pharaon's answer on the principle of disentitlement. For the reasons stated below, the Court grants the RTC's motion.[1]

### PROCEDURAL BACKGROUND

On January 27, 1995, the RTC commenced this action against Defendant Ghaith R. Pharaon in the Circuit Court of the Eleventh Judicial Circuit, in and for Dade County, Florida. The RTC's complaint asserts the following claims against Pharaon: common law fraud; aiding and abetting common law fraud; and aiding and abetting breach of fiduciary duty. All of these claims arise from Pharaon's involvement with Centrust Bank ("Centrust"), a financial institution that has been taken over by the RTC. The RTC seeks to recover losses amounting to $11 million, which the RTC claims were sustained by Centrust as a result of Pharaon's allegedly tortious activities with respect to Centrust. Specifically, the RTC alleges that Pharaon engaged in a secret voting agreement with Centrust Chairman David Paul; and that Pharaon and Paul designed and participated in an illegal "parking" scheme, for the purpose of giving a Centrust subordinated-debentures-offering the appearance of success. Pursuant to the scheme, Centrust allegedly sold $25 million worth of debentures to the Bank of Credit and Commerce ("BCCI") through Pharaon, and, subsequently, repurchased the debentures at par value, rather than at the then lower market value.

On March 15, 1995, Pharaon removed the action to this court pursuant to 28 U.S.C. § 1345, which provides federal jurisdiction over claims asserted by agencies of the United States. On June 28, 1995, Pharaon filed his answer, wherein he asserted several affirmative defenses, including lack of jurisdiction over the person. Shortly thereafter, the RTC moved for an order striking Pharaon's answer on the basis of the disentitlement doctrine. In opposition to the RTC's motion, Pharaon argued, *inter alia*, that the defense of lack of personal jurisdiction makes the doctrine inapplicable in this case. On January 24, 1996, after holding an evidentiary hearing, the Court determined that the exercise of personal jurisdiction over the defendant in this action is proper, and struck the defense of lack of personal jurisdiction from the answer.

On February 15, 1996, the Court held a hearing on the RTC's motion to strike the answer on the principle of disentitlement. Having received documentary evidence, having heard arguments of counsel, and being

---

1. The Court takes notice of the Resolution Trust Corporation's termination on December 31, 1995, and of the statutory succession and substitution of that entity by the Federal Deposit Insurance Corporation ("FDIC"). Therefore, all references in this order to the RTC shall be deemed to apply to the FDIC, in its capacity as the RTC's statutory successor.

otherwise fully advised in the premises, the Court finds that the disentitlement doctrine bars Pharaon from presenting a defense in this action.

## FACTUAL FINDINGS

The Court reaffirms the following selected findings of fact, contained in the Court's January 24, 1996, 915 F.Supp. 351, order on the issue of personal jurisdiction:

1. Centrust was a financial institution located in Miami, Florida. At all times material to this action, David Paul, a resident of Florida, was the Chairman of the Board of Centrust and its principal shareholder.

2. Between 1987 and 1988, Pharaon acquired 748,901 shares of Centrust common stock and 812,681 shares of Series 1 participating stock.

3. With regard to Pharaon's acquisition of Centrust stock, on July 15, 1987, Pharaon sent a telefax communication to David Paul indicating Pharaon's agreement to go along with Paul "in voting whenever such request is necessary." Pharaon adds, "consider our presence with you as a friendly presence for this block of shares as we sincerely believe in your ability to make of this investment a very profitable one for us in the long run, and the whole purpose of making this investment in the first place is our trust in your personal judgment and abilities *as a friend and partner.*" (emphasis added).

4. The Court expressly finds that this communication sets out the nature and scope of Pharaon's association with Paul during the time period relevant to this litigation. Based on this communication, as well as the tenor of Paul's and Pharaon's interaction demonstrated by the evidentiary record, the Court further finds that such association was one in which business and personal goals, as well as official and social activities, were intermingled to such a degree as to be indistinguishable.

5. Over the relevant time period, Pharaon acquired 13.7% of Centrust's common stock and 24.8% of Centrust's Series 1 participating stock. These acquisitions catapulted Pharaon to the position of Centrust's second largest single shareholder, after David Paul.

6. The Court finds that Pharaon's position as Centrust's second largest stockholder acquires added significance, for purposes of analyzing his contacts with Florida, when it is considered in the context of the close business and personal relationship that developed between Paul and Pharaon. Thus, the Court concludes that Pharaon was not merely a passive stockholder of Centrust who happened to own the second largest block of shares in Centrust. Rather, the Court finds that Pharaon developed a significant interest in Centrust's operations and, more specifically, in the problems with banking regulators that led to Centrust's ultimate demise.

*Findings of Fact and Conclusions of Law Regarding Personal Jurisdiction,* issued January 24, 1996, 915 F.Supp. at 354–55.[2]

The Court also makes the following factual findings based on the undisputed record evidence:

7. Pharaon is a citizen and resident of Saudi Arabia. At the time of his involvement with Centrust, Pharaon maintained an office in Savannah, Georgia, and made several visits to Miami, Florida. According to Pharaon, he has, in the past, "spent time in the United States." *See* Defendant Ghaith R. Pharaon's Memorandum of Law in Opposition to Motion to Strike Pharaon's Answer on the Principle of Disentitlement, at 17.

8. In 1992, a grand jury for the Southern District of Florida returned a criminal indictment against Pharaon, David Paul and a third defendant, as a result of their Centrust-related activities. *See United States v. Paul,* 150 F.R.D. 696 (1993), Southern District of Florida. The superseding indictment in that case charges Pharaon with the following offenses: conspiracy (securities trading) in violation of 18 U.S.C. § 371; wire fraud as to subordinated debentures, in violation of 18 U.S.C. § 1343; bank fraud, in violation of 18

**2.** For ease of reference, the Court has renumbered the selected findings consecutively.

U.S.C. § 1344; and misapplication as to subordinated debentures, in violation of 18 U.S.C. § 657.

9. Having conducted a thorough review of the superseding indictment in Case No. 92–134–CR–GRAHAM, and of the complaint in this case, the Court finds that the criminal action (as it pertains to Pharaon) and this action are both predicated on the same alleged conduct on the part of Pharaon.

10. In September, 1993, Pharaon and his attorneys met in Casablanca with the following persons: Daniel P. Kelly, an agent with the Miami office of the Federal Bureau of Investigation; Alan Sullivan, Assistant United States Attorney for the Southern District of Florida; and John West, former United States Ambassador for Saudi Arabia. At the meeting, the parties discussed "how Pharaon and David Paul worked out the $25 million parking scheme of Centrust debentures." *See* Affidavit of Daniel P. Kelly, Exhibit # 7 to the RTC's Memorandum in Support of its Motion to Strike Pharaon's Answer on the Principle of Disentitlement.

11. Based on the foregoing undisputed affidavit, the Court finds that Pharaon has notice of the criminal indictment pending against him in the Southern District of Florida under Case No. 92–134–CR–GRAHAM. The Court further notes that Pharaon does not claim any lack of notice regarding the indictment.

12. Pharaon has not appeared in the Southern District of Florida to answer the criminal charges pending against him in Case No. 92–134–CR–GRAHAM. A review of the docket entries in that case reveals that, as of December 16, 1994, Pharaon has been placed in fugitive status.

13. Pharaon is a defendant in two additional criminal cases pending in federal district courts: *United States v. Abedi*, Crim. Case No. 91–0655(JHG), District of Columbia; and *United States v. Batastini*, Case No. 1:92–CR–331, Northern District of Georgia. Another criminal case, *People v. Abedi*, is pending against Pharaon in the Supreme Court of the State of New York. As with the case pending in the Southern District of Florida, Pharaon has not appeared to answer the charges in any of these three criminal cases.

## DISCUSSION

■ "The disentitlement doctrine provides that a fugitive from justice under certain circumstances loses the right to call upon the resources of the courts." *United States v. Real Property Located at Incline Village*, 47 F.3d 1511, 1515 (9th Cir.1995). The doctrine has long been applied in the context of criminal appeals. *See Ortega–Rodriguez v. United States*, 507 U.S. 234, 239, 113 S.Ct. 1199, 1203, 122 L.Ed.2d 581 (1993) ("It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal."). In *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), the United States Supreme Court articulated the following rationale for dismissing such an appeal:

> No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it *disentitles the defendant to call upon the resources of the Court for determination of his claims.*

*Molinaro*, 396 U.S. at 366, 90 S.Ct. at 498–99 (emphasis added).

According to the Supreme Court's most recent pronouncement on the subject, the doctrine does not bar an appeal by a defendant who was a fugitive during proceedings before the district court but was recaptured prior to lodging the appeal. *Ortega–Rodriguez v. United States*, 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993). In *Ortega–Rodriguez*, the Supreme Court distilled from its disentitlement line of cases the following justifications in support of dismissal of fugitives' criminal appeals: "enforceability concerns"; the theory of disentitlement, which "construes a defendant's flight during the pendency of his appeal as tantamount to waiver of abandonment"; "an important de-

terrent function"; and advancement of "an interest in efficient, dignified appellate practice." *Id.* at 240–42, 113 S.Ct. at 1204–05, *passim.* With regard to the latter, the Court acknowledged that "an appellate court may employ dismissal as a sanction when a defendant's flight operates as an affront to the dignity of the court's proceedings." *Id.* at 246, 113 S.Ct. at at 1207. The Court concluded, however, that by fleeing during the pendency of proceedings before the district court, but prior to the commencement of appellate proceedings, Ortega–Rodriguez had "flouted the authority of the District Court, not the Court of Appeals. The contemptuous disrespect manifested by his flight was directed at the District Court, before which his case was pending during the entirety of his fugitive period. Therefore, under the reasoning of the cases cited above, it is the District Court that has the authority to defend its own dignity, by sanctioning an act of defiance that occurred solely within its domain." *Id.*

■ "The Supreme Court has never extended [the disentitlement doctrine] to civil matters relating to a criminal fugitive, though [the Second Circuit] and other circuits have done so on a number of occasions." *United States v. Eng,* 951 F.2d 461, 465 (2d Cir.1991) (citing appellate cases addressing the issue).[3] *See also United States v. Real Property Located at Incline Village,* 47 F.3d 1511, 1515 (9th Cir.1995) (applying the doctrine to a civil forfeiture case and citing civil cases from various circuits in which the doctrine has been applied); *United States v. $40,877.59 in U.S. Currency,* 32 F.3d 1151, 1153 (7th Cir.1994) (declining to apply the doctrine in a civil forfeiture case, and summarizing the respective positions of the various circuits that have considered applicability of the doctrine in the civil context). Whether in the criminal or civil context, application of the doctrine is discretionary, rather than mandatory. *Ortega–Rodriguez,* 507 U.S. at 250 n. 23, 113 S.Ct. at 1209 n. 23; *Eng,* 951 F.2d at 467.

The Eleventh Circuit is among those appellate courts which have approved invocation of the disentitlement doctrine in the civil context:

This court has long recognized that the fugitive from justice doctrine is not limited to criminal appeals. We have applied the fugitive from justice doctrine to a civil appeal when it relates to the underlying criminal conviction from which the appellant has fled. *Broadway v. City of Montgomery,* 530 F.2d 657 (5th Cir.1976) (fugitive from justice "not entitled to call on the resources of an appellate court"). Similarly, we have applied the fugitive from justice doctrine in affirming a district court's dismissal of a petition to review a tax assessment. *Schuster v. United States,* 765 F.2d 1047 (11th Cir.1985)....

We believe that *Broadway and Schuster* state the proper rule for civil *in rem* forfeiture actions as well.... The *in rem* forfeiture action against the defendant real property is unquestionably related to the appellant's indictment for drug trafficking. By fleeing from justice appellant has disentitled himself from invoking the judicial process in the civil forfeiture action. Thus, the district court was correct in dismissing appellant's claim.

*United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane,* 868 F.2d 1214, 1216 (11th Cir.1989).

■ Applying the Eleventh Circuit's rationale in *One Parcel,* as well as the Supreme Court's holding in *Ortega–Rodriguez* that a court may employ the doctrine to vindicate the flouting of its own authority, this Court concludes that application of the doctrine in the civil context requires satisfaction of three elements: (1) fugitive status of the party against whom the doctrine is being invoked; (2) relatedness between the criminal case from which the party is a fugitive and the civil case in which the doctrine is invoked; and (3) pendency of both the criminal and the civil cases before the same court. All three prongs are amply satisfied in this case. As

**3.** Apparently in recognition of a conflict among the circuits, the Supreme Court has granted a petition for writ of certiorari in *United States v. Real Property Located at Incline Village,* 47 F.3d 1511 (9th Cir.1995), *sub nom, Degen v. United States,* —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996), a civil forfeiture case involving application of the disentitlement doctrine.

previously noted, Pharaon has been indicted in Case No. *United States v. Paul,* 150 F.R.D. 696 (1993), Southern District of Florida. Pharaon has not appeared in the Southern District of Florida to answer the criminal charges pending against him even though he has notice of the pendency of such charges. Moreover, as of December 16, 1994, Pharaon has been placed in fugitive status with respect to the criminal case. Pharaon's fugitivity status, therefore, is similar to that of the claimant in *One Parcel,* where the Eleventh Circuit affirmed the district court's application of the disentitlement doctrine.[4] Second, the criminal case pending against Pharaon in this district and this action are both predicated on the same alleged conduct on the part of Pharaon; thus, the cases are related. Finally, both the criminal case and the civil case are pending in the Southern District of Florida. Hence, the Court concludes that application of the disentitlement doctrine to Pharaon is appropriate.[5]

■ In reaching this determination, the Court has carefully considered Pharaon's arguments regarding deprivation of due process and his comparison of the disentitlement doctrine with the English practice of "outlawry", which has been rejected by our courts. As noted by the Eleventh Circuit in *One Parcel,* however, a fugitive from justice "has waived his right to due process." *One Parcel,* 868 F.2d at 1217 (citing *United States v. $45,940,* 739 F.2d 792, 798 (2d Cir.1984). Moreover, the power to retract such waiver is entirely in Pharaon's hands. To accomplish this, he must appear in the Southern District of Florida to answer the charges pending against him in Case No. 92–134–CIV–GRAHAM. Such appearance would nullify his fugitive status and render the disentitlement doctrine inapplicable to him. Absent such action, Pharaon may not selectively invoke the resources of this court to defend a civil action in this district, thereby invoking the resources of this court, while flouting this court's authority by refusing to appear and answer the criminal charges that are pending against him in this district.

## CONCLUSION

Based on the foregoing considerations, it is

ORDERED AND ADJUDGED that Plaintiff Resolution Trust Corporation's ("RTC") motion to strike Defendant Ghaith R. Pharaon's answer on the principle of disentitlement (D.E. # 21) is GRANTED. The answer filed by Pharaon on June 28, 1995 is STRICKEN and the Court DEEMS ADMITTED all of the facts alleged in the complaint. The RTC has thirty days from the date of this order to file an appropriate motion for the final disposition of this action. Should Pharaon appear in the Southern District of Florida to answer the charges pending against him in Case No. 92–134–CR–GRAHAM prior to the expiration of the thirty day period, the Court shall vacate this order and set this case for trial.

DONE AND ORDERED.

■

**4.** The claimant resided in a foreign country and was subject to an indictment in the Southern District of Florida, but had not appeared to answer the charges. *One Parcel,* 868 F.2d at 1215–16.

**5.** With the exception of the last factor (pendency of both the criminal and the civil case before the same court) United States District Judge Michael B. Mukasey reached the same conclusion as this Court in *BCCI Holdings v. Pharaon,* No. 94 Civ. 3058(MBM) 1995 WL 489426 (S.D.N.Y. Aug. 11, 1995). Because no criminal case was pending against Pharaon in the Southern District of New York, Judge Mukasey limited Pharaon's disentitlement to barring him "from conducting any discovery in this action until he relinquishes his fugitive status and appears before the various courts in which the indictments are pending, or otherwise with permission of the court." *Id.* at *4. The undersigned has thoroughly reviewed and agrees with Judge Mukasey's reasoning in *BCCI Holdings.*